UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KAREN D. GRIDER,

       Plaintiff,

                                          Civil Action 2:10-cv-00083

v.                                      Judge Gregory L. Frost
                                           Magistrate Judge E.A. Preston Deavers

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

REPORT AND RECOMMENDATION

### I.  Introduction

Plaintiff, Karen D. Grider, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits.  Plaintiff filed her application for disability insurance benefits on April 10, 2006, alleging that she has been disabled since April 6, 2006, due to back problems and depression.  (R. at 82-87, 106.)  The Social Security Administration denied Plaintiff's application initially and again upon reconsideration.  (R. at 70-74, 78-79.)  Plaintiff requested a *de novo* hearing before an administrative law judge ("ALJ").  (R. at 81.)

On April 16, 2009, ALJ John R. Allen held a hearing at which Plaintiff, represented by counsel, appeared, and testified.  A vocational expert also testified.  On May 9, 2009, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12–22.)  On September 9, 2009, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-3.)

Plaintiff timely commenced the instant action.  In her Statement of Errors, Plaintiff contends that the ALJ erred in failing to give the opinions of Dr. Karen Evans, Plaintiff's treating physician, controlling weight; that the ALJ erred in assessing Plaintiff's credibility; and that Plaintiff is disabled pursuant to the Medical Vocational Guidelines.  The Commissioner responded in opposition to Plaintiff's contentions, Plaintiff replied, and the matter is now ripe for review.  For the reasons that follow, it is **RECOMMENDED** that the Court **AFFIRM** the decision of the Commissioner.

## II.  Plaintiff's Disability Report and Hearing Testimony

Plaintiff was fifty years old at the time of the administrative hearing.  Plaintiff's past relevant work was as a registered nurse.  Plaintiff has an associate's degree and worked as a nurse from 1983 until 2006.  (R. at  45.)

In conjunction with her disability application, Plaintiff filled out a "Disability Report" in which she provided information about her physical conditions and past work.  (R. at 105–14.) Plaintiff maintained that she was unable to work because she was "in pain all the time" due to her back problems and depression.  (R. at 106.)  Plaintiff's Report indicates that she worked as a registered nurse until April 6, 2006.  (R. at 106–07.)  In her Report, Plaintiff states that she stopped working on this date "because my back was hurting too bad and the Doctor took me off of work."  (R. at 106.)  Furthermore, Plaintiff explicitly provided in her report that she became unable to work "because of [her] illnesses, injuries, or conditions" on April 6, 2006.  (R. at 106.)

At the April 2009 hearing, Plaintiff testified that she "pretty much resigned" from work in 2006 after having difficulty with her nursing license.  (R. at 46.)  She testified that at the time she resigned, she had been having difficulty working because her job required a lot of lifting and

walking.  (*Id.*).  Plaintiff noted that she had spoken with the nurse clinician about "looking at maybe doing a disability claim" and had been discussing filing for disability with her husband for about a year before her resignation.  (*Id.*)

In describing her impairments, Plaintiff testified that her worst problem was fibromyalgia, which caused pain in her hands, thumbs, shoulders, back, hips, and feet.  (R. at 47.)  Plaintiff also testified that while her back surgery in 2002 had relieved the pain radiating down her leg, she continued to have back pain.  (R. at  48.)  Plaintiff testified that she believed her physical pain was worse at the time of the hearing than it was two years before.  (R. at 54.)  She also complained of fatigue and stated that she takes daily naps.  (R. at 49.)  Plaintiff noted that her pain caused depression, but that she stopped mental health counseling in 2006 because she had reached the best level she felt she could.  (R. at 62-63.)  Plaintiff stated that her depression was quite well-controlled on medication and she was doing "much, much better" although she did acknowledge occasional episodes of irritability.  (R. at  63–64.)

As to daily activities, Plaintiff testified she could wash a load of dishes for 20 minutes before needing to take a break.  (R. at 50.)  Plaintiff stated that she makes the bed, does some cooking, and does minimal grocery shopping.  (R. at  51–52.)  She further indicated that she frequently uses a heating pad, including between her activities.  (R. at 49.)  Plaintiff testified that she brushes her horses, gardens, and goes to the rodeo once year.  (R. at 52–53.)  She stated that twice over the past couple of years she had ridden her horses, with her husband leading her, for ten minute periods.  (R. at 52.)

Plaintiff estimated that she could sit comfortably for 5-10 minutes, but if she was allowed to shift around, she could sit for 20-30 minutes without interruption.  (R. at 50.)  Plaintiff stated

3

she could stand for 20 minutes without interruption.  (R. at 50–51.)  According to Plaintiff, she is able to lift a gallon of milk and drive short distances.  (R. at 44, 51.)  Plaintiff also noted that she goes on walks lasting approximately fifteen minutes.  (R. at 50–51.)  At the recommendation of her doctor, Plaintiff attempts to perform aerobic exercises daily with an exercise ball.  (R. at 55.)

### III.  The Medical Records[1]

A.  Records through April 2006

Plaintiff's relevant impairment history began over five years before her alleged disability date.  On May 14, 2000, Plaintiff presented to the emergency room of Pike Community Hospital ("Pike"), complaining of hip and back pain after falling at work two days earlier.  (R. at 226-30.)  Plaintiff reported worsening pain on May 25, 2000.  (R. at 223.)  Plaintiff visited the Pike emergency room again on June 20, 2000, due to continued pain in her hip and back.  (R. at 220–22.)  An MRI revealed a minimal disc bulge at L4-L5.  (R. at 220.)  Plaintiff was diagnosed with lumbar radiculopathy.  (*Id.*)

Plaintiff underwent physical therapy from May 2000 to September 2000.  (R. at 231-45.)  Plaintiff experienced improvement with mobility, but was guarded and shifted her weight to the left.  (*Id.*)  She reported improved activities at home and work, but also stated that most of her problems occurred after she performed receptive standing and sitting.  (R. at 245.)

The medical records reflect that in October 2002, Plaintiff had back surgery while she

---

[1] In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged mental impairments.  (*See* Statement of Errors 11–21, ECF No. 14).  Accordingly, the Court will focus its synopsis of the medical record evidence on Plaintiff's alleged exertional impairments.  Plaintiff has attached medical records concerning Plaintiff's mental health treatment that were apparently omitted from the record.  (*See* Statement of Errors 22–49, ECF No. 14.)  Plaintiff, however, does not seek a sentence six remand pursuant to 42 U.S.C. § 405(g).  (Reply 4, ECF No. 17.)  In performing its review of the ALJ's decision, the undersigned will not consider this material because it was not before the ALJ.  *See Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 460 n.2 (6th Cir. 2008) (indicating that the Court should not consider evidence that was not before the ALJ unless the claimant requests a sentence six remand).

was living in Montana.  (*See e.g.*, R. at 246, 282, 327.)  Specifically, Plaintiff had a microdisectomy of the L4-L5 level.  (R. at 246, 282.)  Plaintiff indicated that although the surgery provided some temporary relief, she continued to have pain even after the surgery.  (*Id.*)

In April 2004, Plaintiff once again reported to the Pike emergency room.  (R. at 215–19.) Plaintiff specifically complained of right hip and leg pain, with pain radiating down to the leg. (R. at 216.)  Dr. Michael Bess diagnosed Plaintiff with acute exacerbation of chronic pain and discharged her after prescribing medication.  (R. at  216–17.)

Plaintiff began treating with family physician, Dr. Susan Sandmann-Uy, on August 11, 2004.  (R. at 268.)  Plaintiff complained of lower back pain, hip pain, leg pain, and left shoulder pain.  (*Id.*)  Plaintiff reported that she had a history of fibromyalgia, which was diagnosed 20 years ago, that flared up occasionally.  (*Id.*)  She also noted a history of degenerative joint disease.  (*Id.*)  Examination revealed positive tenderness along Plaintiff's spine and shoulder joint.  (R. at 267.)  Dr. Sandman-Uy diagnosed Plaintiff with generalized muscular pain, possibly secondary to fibromyalgia and joint pain.  (*Id.*)  Dr. Sandmann-Uy saw Plaintiff again on September 22, 2004, prescribing her medicine for her lumbosacral pain and recommending physical therapy.  (R. at 261.)

From September through November 2004, Plaintiff underwent physical therapy.  (R. at 246-56.)  Upon discharge, Plaintiff reported improvements at home.  (R. at 256.)  She reported that she had a sore spot in her lower back, but that it was less painful and less bothersome after the therapy.  (*Id.*)

On April 24, 2005, Plaintiff presented to the Pike emergency room complaining of back pain.  (R. at 193–94.)  Specifically, she reported pain in her lower back that radiated into her leg.

5

(R. at 193.)  Examination revealed an old scar at L5-S1 that was well-healed and tender to palpation.  (*Id.*)  She had a negative straight leg raise.  (*Id.*)  Plaintiff was diagnosed with acute lumbar strain with radicular right leg pain and status post L5-S1 disk surgery.  (R. at 194.)

Plaintiff went to the emergency room again on March 5, 2006, with right leg pain.  (R. at 184.)  She was diagnosed with right sciatica, and allowed to return to work three days later.  (R. at 184, 188.)  On March 7, 2006, testing revealed mild scoliosis.  (R. at 181.) An MRI of Plaintiff's lumbar spine revealed status post laminectomy at the right side of L4-L5 with persistent degenerative changes and contrast enhancing fibrosis in the right anterolateral spinal canal which may impinge upon the intercanal right L5 nerve root but did not impinge upon the exiting L4 nerve root.  (R. at 182.)  There were also mild degenerative changes of spondylosis at multiple other levels in the lumbar spine without other evidence of disc herniation. (R. at 182.)

Plaintiff saw Certified Nurse Practitioner ("CNP") Elizabeth Nathan on April 6, 2006. (R. at 259.)  Examination revealed tenderness in both knees and pain in lateral aspects of both patella.  Plaintiff also had a lot of pain in the lumbar and lumbosacral areas.  (*Id.*)  CNP Nathan's diagnoses included chronic bilateral knee pain, chronic back pain, and fatigue.  (*Id.*)  CNP Nathan opined that Plaintiff was a candidate for disability.  (*Id.*)

On April 7, 2006, Plaintiff returned to the emergency room with complaints of back pain radiating down to her right hip.  (R. at 175.)  Upon examination, Plaintiff's gait was normal but antalgic.  (*Id.*)  Plaintiff had some right paraspinal tenderness.  (*Id.*)  The doctor noted a decreased active range of motion, and straight leg raising on the right was positive.  (*Id.*)  Her reflexes and sensation were normal.  (*Id.*)  Plaintiff was diagnosed with acute exacerbation of chronic back pain and a herniated disc.  (R. at 176.)  On April 12, 2006, Plaintiff underwent

6

several x-rays of her pelvis, right and left hip, and right and left knee which were all normal.  (R. at 172-73.)

On April 13, 2006, Martin Sevrey, D.O., performed a physical examination on Plaintiff for back pain and an evaluation relative to her disability claim.  (R. at 327–28.)  Dr. Sevrey found Plaintiff had no reflex, sensory, or motor deficits; had an "excellent" range of motion in her lumbar; and that Plaintiff's gait is unremarkable.  (R. at 327.)  He noted that Plaintiff got off and on the examination table without difficulty.  (*Id.*)  Dr. Sevrey diagnosed Plaintiff with post laminectomy pain in her lumbar spine. (*Id.*)  Dr. Sevrey opined that at most she was entitled to a permanent/partial impairment of 15% and prescribed pain medication.  (*Id.*)

B.  State Agency Evaluation

In July 2006, state agency reviewing physician, Dr. W. Jerry McCloud, evaluated Plaintiff's physical residual functional capacity ("RFC") after reviewing her medical file as of that date.  (R. at 303–10.)  Dr. McCloud concluded that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  (R. at 304.)  According to Dr. McCloud, Plaintiff could stand, walk, and/or sit for about six hours in an eight hour workday.  (*Id.*)  In reaching these conclusions, Dr. McCloud considered Plaintiff's back problems following her surgery, as well as her complaints of pain.  (R. at 305.)  Dr. McCloud observed, however, that despite allegations of fibromyalgia, the condition was not diagnosed.  (*Id.*)  Dr. McCloud also found that Plaintiff should never climb ladders, ropes, or scaffolds, but she could occasionally balance, stoop, kneel, crouch, or crawl.  (R. at 305.)  In his final notes, Dr. McCloud opined that Plaintiff was partially credible in her description of her conditions and limitations.  (R. at 306.)  Nevertheless, Dr. McCloud also noted Plaintiff had "a history of being apprehended and going through rehab for

stealing Morphine with her nurses medicine card at work in 2004." (R. at 308.) He also noted that she was trying to have her nurses license reinstated. (*Id.*) Dr. McCloud's opinion was affirmed by state agency physician, Gerald Klyop, M.D., on November 20, 2006. (R. at 346.)

At the request of the state agency, psychologist Albert E. Virgil, Ph.D., performed a clinical interview with Plaintiff, also in July 2006. (R. at 285–87.) Plaintiff reported that she was not working because of her back and leg pain. (R. at 285.) In terms of daily activities, Plaintiff reported to Dr. Virgil that she straightens up her house, watches her children swim and play softball, cleans her flower bed, and is able to cook and shop independently. (R. at 286–87.) Plaintiff stated, however, that she could not do these activities for long periods of time. (*Id.*) Plaintiff also reported fishing, gardening, brushing her horses, and swimming with her children. (R. at 287.)

C.  Dr. Evans

Neurologist Karen Evans, M.D., treated Plaintiff from June 13, 2006 until at least March 27, 2009. (R. at  282-84, 347-55, 367-81, 390-408, 414-15, 421-26.) On June 13, 2006, Plaintiff indicated to Dr. Evans that she continued to have worsening pain following her October 2002 surgery. (R. at 282.) Dr. Evans' examination revealed pain with right hip external rotation that referred to the groin, right hip, and gluteal area. (R. at 283.) Plaintiff had a negative seated and supine straight leg raise. (*Id.*) Plaintiff had good range of motion in the lumbar spine with no pain during movement. (*Id.*) Plaintiff had diffuse tenderness in the lower lumbar paraspinal segments and over the right SI junction, and tenderness to a lesser degree over the left SI junction. (*Id.*) Dr. Evans also noted mild tenderness with palpation over the left trochanteric bursa. (*Id.*) Dr. Evans diagnosed Plaintiff with chronic low back pain with right lower extremity

paresthesias, and changed her medication from Vicodin to Percocet. (*Id.*)

In September 2006, Plaintiff saw Dr. Evans for a follow up examination. (R. at 352–53.)
Dr. Evans reported that Plaintiff had diminished pain with palpation of the right trochanteric
bursa. (R. at 352.) Dr. Evans also reported that Plaintiff had significant amount of pain with
palpation of the lumbar paraspinal musculature and over the right SI junction. (*Id.*) Plaintiff
also was experiencing some pain with palpation along the right adductor musculature. (*Id.*) Dr.
Evans suspected that Plaintiff suffered from a significant amount of pain that had a myofascial
component to it and that her right SI joint also added to the discomfort. (*Id.*) Dr. Evans
recommended physical therapy and increased the strength of Plaintiff's pain medication. (R. at
353.)

Plaintiff attended physical therapy from September 20, 2006 through October 27,
2006. (R. at 335–44.) Upon discharge, Plaintiff noted her pain ranged from 4 to 8 on a 10 point
scale. (R. at 335.) There was some diminished strength in her right hamstring and right gluteus.
(*Id.*) Plaintiff was unable to rate her overall progress, reporting that she saw no change in pain
when off her pain medication, and, therefore, decided to discontinue therapy. (*Id.*)

In October 2006, Plaintiff continued to report back and hip pain to Dr. Evans. (R. at
350.) Physical examination revealed mild restriction of hip flexion and internal and external
rotation bilaterally. (*Id.*) Dr. Evan's evaluation of Plaintiff's lumbar spine revealed diffuse
tenderness in the lower lumbar paraspinal musculature. (*Id.*) Plaintiff continued to experience
significant pain with palpation of the SI joints. (R. at 350.) Plaintiff also had mild tenderness
with palpation over the trochanteric bursa bilaterally and pain with lumbar extension and
restriction of lateral flexion. (R. at 351.) Dr. Evans suggested that Plaintiff would need to make

9

lifestyle changes in order to manage her myofascial pain.  (*Id.*)  Dr. Evans recommended

continuation of physical therapy, and adjusted Plaintiff's pain medication.  (*Id.*)  Dr. Evans also

advised Plaintiff that she should perform twenty to thirty minutes of low-impact aerobic exercise

daily.  (*Id.*)

 In January 2007, Dr. Evans reported that Plaintiff had a significant amount of pain with

palpation over the right trochanteric bursa.  (R. at 347.)  On February 2007, Plaintiff reported

that her back pain was under relatively good control, and rated her pain as a 4 on a 10 point

scale.  (R. at 378.)   Dr. Evans noted that Plaintiff had some pain with palpation in the lower

lumbar paraspinal musculature and exquisite tenderness with palpation over the right SI junction.

(*Id.*)  Plaintiff had no pain with palpation over the trochanteric bursae bilaterally.  (*Id.*)  Dr.

Evans continued Plaintiff on her regimen of medications.  (R. at  378-79.)

 Dr. Evans ordered a nerve conduction study for carpal tunnel syndrome in April 2007,

after Plaintiff complained of numbness and tingling in her right hand.  (R. at 376-77.)  Upon

examination, and because Plaintiff was complaining of pain in both feet, Dr. Evans diagnosed

Plaintiff with plantar faciitis.  (R. at 376.)  On July 9, 2007, Dr. Evans diagnosed Plaintiff with

trochanteric bursitis in the left hip.  (R. at 372.)  Dr. Evans noted that Plaintiff did not appear to

be in acute distress.  (*Id.*)

 Dr. Evans saw Plaintiff concerning complaints of fibromyalgia in August 2007.  (R. at

370).  Examination revealed multiple trigger points localized throughout the cervical, thoracic,

and lumbar paraspinal musculature; the hips; and lateral epicondyles in the medial aspect of the

knees.  (*Id.*)  During a follow-up examination on October 9, 2007 regarding Plaintiff's

fibromyalgia, Plaintiff reported that her pain was a little better, but still a 5 on a 10 point scale.

(R. at 368.)  In December 2007, Dr. Evans noted diffuse tenderness with palpation throughout the thoracic and lumbar spine, as well as the soles of Plaintiff's feet.  (R. at 367.)  She rated her pain as an 8 out of 10.  (*Id.*)  In January 2008, Dr. Evans reported that Plaintiff had pain with passive hip internal and external rotation, and she continued to have multiple trigger points localized throughout the thoracic, lumbar, and gluteal musculature.  (R. at 405.)

In March 2008, Dr. Evan's examination of Plaintiff revealed multiple trigger points throughout the thoracic and lumbar paraspinal musculature.  (R. at 401.)  Dr. Evans reported that Plaintiff appeared to be in no acute distress.  (*Id.*)  Plaintiff had increased pain with lumbar flexion, extension, and lateral flexion.  (R. at 401.)  In May 2008, Dr. Evans noted that Plaintiff's pain was relatively well controlled.  (R. at 395.)  Dr. Evans did report increased pain in Plaintiff's lower lumbar area at this time.  (*Id.*)  After examining Plaintiff in September 2008, Dr. Evans found that Plaintiff's pain was well controlled and Plaintiff showed no signs or symptoms of diversion.  (R. at 415.)  Dr. Evans found that Plaintiff continued to demonstrate pain over the SI joints and in the lower lumbar segments.  (*Id.*)  An MRI of Plaintiff's thoracic spine taken in March 2009, revealed shallow disc displacements that barely encroached into the central canal at the mid and lower thoracic levels and no evidence of neurocompressive disc disease.  (R. at 424.)

On March 12, 2009, Dr. Evans provided a Medical Opinion Regarding Physical Capacity for Work.  (R. at 429.)  Dr. Evans checked a box that indicated Plaintiff was capable of sedentary work.  (*Id.*)  Dr. Evans did not respond to the portion of the form that requested medical findings to support her conclusion.  (*Id.*)

11

### IV.  Expert Testimony

Vocational expert Richard Oestreich testified at the April 2009 administrative hearing. Mr. Oestreich concluded that Plaintiff's past work as a registered nurse fell into the medium and skilled categories (R. at 65.).  Mr. Oestreich testified that a person with the attributes which the ALJ assigned could not perform her past work.[2]  (*Id.*)  He also concluded that Plaintiff's nursing skills would not be transferrable to other nursing positions because she had only an associate's degree as opposed to a bachelor's degree in nursing.  (R. at 65–66.)  Mr. Oestreich then described a number of light-exertion jobs that a person with the relevant attributes could perform including food service, light packing, and assembly.  (R. at 66.)  Finally, Mr. Oestreich stated that if Plaintiff was limited to the extent she described, she would be unable to perform a significant number of jobs, particularly because Plaintiff was distracted by pain, which would prohibit concentration for eight hours a day.  (R. at 67.)

### V.  The Administrative Decision

In his May 4, 2009 decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 9–22.)  At the first step of the sequential evaluation process, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010, and has not engaged in substantial gainful activity since the alleged onset of disability of April 6, 2006.[3]  (R. at 14.)

---

[2]  The hypothetical attributes the ALJ stated in his question matched the RFC he eventually assigned in his administrative decision, which is detailed below.

[3]  Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:
1.      Is the claimant engaged in substantial gainful activity?
2.      Does the claimant suffer from one or more severe impairments?

Next, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbosacral spine status post 2002 L4-5 laminectomy and fibromyalgia.  (*Id.*)  At step three, the ALJ then determined that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in 20 C.F.R.  Part 404, Subpart P, Appendix 1.  (R. at 16.)

At step four of the sequential process, the ALJ evaluated Plaintiff's RFC.  Specifically, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform lifting and/or carrying 20 pounds occasionally and 10 pounds frequently.  The claimant can sit for six hours in an eight-hour workday and stand and/or walk for six hours in an eight-hour workday, but must be able to change position every 45 to 60 minutes. She can frequently climb ramps/stairs but can never climb ladders/ropes/scaffolds.  She can occasionally balance, stoop, kneel, crouch and crawl.  She is not otherwise functionally limited and despite her limitations is capable of remaining on task.

(R. at 17.)

In reaching his RFC determination, the ALJ found that while Plaintiff's impairments could reasonably cause the alleged symptoms, Plaintiff was not entirely credible as to the intensity persistence, and limiting effect of her symptoms.  (R. at 18.)  To make this credibility determination, the ALJ reviewed various portions of the medical records, including the findings of Drs. Sevrey, Evans, and McCloud.  (R. at 18–20.)  The ALJ concluded, in part, that these

---

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue,* 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

records demonstrated "some degree of pain control with conservative treatment including pain management." (R. at 20.) Moreover, the ALJ found that Plaintiff's testimony regarding her symptoms was inconsistent with her "extensive daily activities." (*Id.*) The ALJ also found that Plaintiff's testimony at the hearing, that she left work due to losing her nursing license, was inconsistent with portions of her disability application in which she maintained that her inability to continue working was due to physical impairment as of April 6, 2006. (*Id.*)

The ALJ considered opinion evidence in assessing Plaintiff's RFC. (R. at 19–20.) The ALJ gave the RFC conclusions of Drs. McCloud and Klyop great weight, stating that they were consistent with and supported by the objective medical evidence. (R. at 19.) The ALJ also concluded, however, that in addition to the state agency physicians' opinions, Plaintiff required the ability to change position every 45 to 60 minutes. (R. at 20.) The ALJ considered Dr. Evans' opinion that Plaintiff was only capable of sedentary work, but found it unsupported and unpersuasive. (*Id.*) The ALJ noted that Dr. Evans' opinion was a "description on a form rather than a personalized specific function by function analysis." (*Id.*) Additionally, the ALJ found that Dr. Evans' treatment records failed to demonstrate the level of severity in Plaintiff's impairments to justify a sedentary finding. (*Id.*)

After reaching the above RFC, the ALJ determined that Plaintiff was unable to perform her relevant past work. (R. at 20–21.) Nevertheless, based on sections 202.14 and 202.21 of the Medical-Vocational Guidelines ("Grids"), coupled with Mr. Oestreich's testimony, the ALJ found that Plaintiff was able to perform a significant number of jobs in the national economy. (*Id.*) This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not disabled within the meaning of the Social

14

Security Act.  (R. at 22.)

## VI.  Standard of Review

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the [Commissioner's] decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the Commissioner's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a

substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VII. <u>Legal Analysis</u>

Plaintiff challenges the ALJ's decision on three grounds. First, Plaintiff maintains that the ALJ erred in failing to give controlling weight to the opinions of Dr. Evans, Plaintiff's treating physician, and granting great weight to the state agency reviewing physician's conclusions. Plaintiff emphasizes that the ALJ failed to properly consider the opinion evidence in light of Dr. Evans' fibromyalgia diagnosis. Second, Plaintiff asserts that the ALJ erred in assessing her credibility. Finally, Plaintiff maintains that under the Medical Vocational Guidelines, she is entitled to disability at least as of July 29, 2008, when she turned fifty years old.

### A.  <u>Treating Physician Opinion and Fibromyalgia</u>

Plaintiff's first contention is that the ALJ erred in weighing Dr. Evans' opinion that Plaintiff was only capable of sedentary work. As detailed above, Dr. Evans treated Plaintiff from June 2006 to March 2009 for her post-surgery back and leg pain, as well as fibromyalgia. Instead of relying on Dr. Evans' opinion, that Plaintiff was capable of only sedentary work, the ALJ assigned Plaintiff an RFC generally mirroring the light-exertional category.

#### 1.  <u>Treating Physician Opinions</u>

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 404.1527(d). Certain types of opinions, however, are normally entitled to greater weight. 20 C.F.R. § 404.1527(d). For example, the ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . ." 20 C.F.R. § 404.1527(d)(2); *Blakley*, 581 F.3d at 408.  To qualify as a treating source, a physician must have "examined the claimant . . . [and have] an 'ongoing treatment relationship' with [the claimant] consistent with accepted medical practice." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502).

If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).  The United States Court of Appeals for the Sixth Circuit has noted:

> On the other hand, a Social Security Ruling explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

*Blakley*, 581 F.3d at 406.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09-6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20

C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

Along similar lines, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources.  20 C.F.R. § 404.1527(d); *see also West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians . . . .").  Nevertheless, an ALJ need not credit a treating physician opinion that is conclusory and unsupported.  *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir.1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Finally, the Commissioner reserves the power to decide certain issues, such as  a claimant's residual functional capacity.  20 C.F.R. § 404.1527(e).  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)", opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

2. Fibromyalgia

The ALJ found that Plaintiff has fibromyalgia and determined that it was a severe impairment.  The United States Court of Appeals for the Sixth Circuit has recognized that

18

fibromyalgia can result in a disability. *See, e.g.*, *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988). Nevertheless, fibromyalgia presents challenges in disability analyses because "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243; *see also Swain v. Comm'r of Soc. Sec.,* 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003) ("Fibromyalgia is an 'elusive' and 'mysterious' disease. It has no known cause and no known cure."). Instead, "fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.'" *Rogers*, 486 F.3d at 244 (quoting *Preston*, 854 F.2d at 820). Accordingly, "[t]he process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id.* (citing *Preston*, 854 F.2d at 820; *Swain*, 297 F. Supp. 2d at 990).

Because of the lack of objective signs for fibromyalgia, a treating physician's "opinion must necessarily depend upon an assessment of the patient's subjective complaints." *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D. Ohio 2003); *see also Preston*, 854 F.2d at 819–20 (holding that substantial evidence did not contradict treating physician's fibrositis opinion even though clinical findings and test results were fairly normal). Nevertheless, a treating physician's "diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ." *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008); *see also Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 527 (6th Cir. 2003) ("A person with a condition of fibromyalgia certainly could have serious enough pain to have a disability under the Social Security Act, but the condition does not automatically qualify as a listing level impairment.") This is especially true when there is evidence that a claimant's fibromyalgia is

improving or stable.  *Vance*, 260 Fed. Appx. at 806.

Finally, the nature of fibromyalgia "places a premium . . . in such cases on the assessment of the claimant's credibility."  *Swain*, 297 F. Supp. 2d at 990.  Even within the context of fibromyalgia, it is still the ALJ's role to evaluate a Plaintiff's credibility regarding her subjective complaints.  *Rogers,* 486 F.3d at 249.  Accordingly, "[a]lthough the treating physician's assessment can provide substantial input into this credibility determination, ultimately, the ALJ must decide . . . if the claimant's pain is so severe as to impose limitations rendering her disabled."  *Swain*, 297 F. Supp. 2d at 990.

3.  Analysis

The undersigned finds that the ALJ did not err in assigning Plaintiff's RFC and rejecting the treating physician opinion of Dr. Evans.[4]  Several reasons support this conclusion.

First, Dr. Evans' bare conclusion that Plaintiff fell within the "sedentary" category is not entitled to the controlling deference Plaintiff seeks.  As noted above, although an ALJ may not ignore any medical conclusions, opinions on issues that are reserved to the Commissioner are not entitled to special significance.  20 C.F.R. § 404.1527(e).  A relevant Social Security Ruling further provides:

> Under 20 CFR 404.1527(e) and 416.927(e), some issues are not medical issues regarding the nature and severity of an individual's impairment(s) *but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability*. The following are examples of such issues:
> . . .
> 2. What an individual's RFC is
> . . .
> The regulations provide that the final responsibility for deciding issues such as

---

[4] Dr. Evans is clearly a treating physician within the meaning of the Regulations.  *See* 20 C.F.R. § 404.1502.

these is reserved to the Commissioner.

SSR 96-5p, 1996 WL 374183, *2 (July 2, 2000).  Distinguishing between medical source

statements and RFC assessments, the same Social Security Ruling provides:

> From time-to-time, medical sources may provide opinions that an individual is
> limited to "sedentary work," "sedentary activity," "light work," or similar
> statements that appear to use the terms set out in our regulations and Rulings to
> describe exertional levels of maximum sustained work capability. Adjudicators
> must not assume that a medical source using terms such as "sedentary" and
> "light" is aware of our definitions of these terms. *The judgment regarding the
> extent to which an individual is able to perform exertional ranges of work goes
> beyond medical judgment regarding what an individual can still do and is a
> finding that may be dispositive of the issue of disability.*

*Id.* at *5.

In this case, the ALJ did not reject Dr. Evans' diagnoses.  Instead, after considering the

opinion, the ALJ rejected Dr. Evans' isolated conclusion that Plaintiff was limited to sedentary

work.  (R. at 20.)  Dr. Evans was aware of the definition of sedentary work, which was described

immediately next to the sedentary box which she checked.  Nevertheless, based on the Social

Security Ruling above, Dr. Evan's exertional level opinion went beyond the scope of a medical

source statement and touched on an issue reserved to the ALJ.  Accordingly, Plaintiff was not

entitled to the treating physician deference she seeks.

Second, even applying the treating physician rule, the ALJ did not commit procedural

error in rejecting Dr. Evans' opinion.  The ALJ satisfied the goals of the good reason and

treating physician rule.  Although the ALJ did not assign a specific weight to the opinion, the

ALJ's declaration that Dr. Evans opinion was "unsupported and unpersuasive" was sufficiently

specific, when read in the context of his opinion, to make clear to any subsequent reviewer that

he rejected the opinion.  Furthermore, the ALJ's opinion makes clear that he considered the

relevant factors, outlined in 20 C.F.R. § 404.1527,  in weighing Dr. Evans' opinion.  For

example, in assessing the Plaintiff's RFC, the ALJ summarized Dr. Evans' treatment notes.  (R.

at 18–19.)  In doing so, he recognized that Dr. Evans was a specialist, and detailed findings of

Dr. Evans from June of 2006 until March 2009.  (*Id.*)  Finally, in rejecting Dr. Evans' opinion,

the ALJ focused on its lack of supportability.  (*See* R. at 20.)  Specifically, the ALJ found that

Dr. Evans' conclusion lacked any specific analysis and was also unsupported by Dr. Evans' own

treatment records.  (*Id.*)  Accordingly, on a procedural level, the ALJ did not violate the treating

physician rule.

Third, the undersigned finds that the ALJ's rejection of Dr. Evans' opinion, that Plaintiff

was capable of sedentary work only, was justified.   As noted above, Dr. Evans' sedentary

opinion was conclusory in nature, consisting of her checking a "sedentary work" level box,

which was followed by a generalized definition, with no description of the specific findings or

treatment records supporting her opinion.  (R. at 429.)  Because Dr. Evans did not designate

what specific findings supported her conclusion, it is unclear whether Dr. Evans' opinion is

based on her treatment of Plaintiff's post-surgery back pain, her fibromyalgia, or both.

Accordingly, the ALJ was justified in considering the objective diagnostic and clinical findings

within Dr. Evans' treatment notes as part of his reasoning for rejecting Dr. Evans' opinion,

assuming that the opinion was based in part on Plaintiff's degenerative disc disease.  With

respect to Plaintiff's degenerative disc disease, the undersigned finds substantial evidence

supporting the ALJ's rejection of Dr. Evans' sedentary opinion.  Specifically, Dr. Evans'

treatment notes and findings, as well as other portions of the record, do not provide any clear

support for the notion that Plaintiff's back pain limits her to sedentary work.  As the ALJ noted,

22

although Plaintiff underwent a microdisectomy in 2002, later testing did not reveal indication of a recurrent disc malady.  Tellingly, Dr. McCloud, who reviewed Plaintiff's file shortly after her alleged disability date, and considered Plaintiff's post-surgery back pain, found Plaintiff capable of performing tasks consistent with a light level of work.  (*See* R. at 303–10.)

To the extent Plaintiff contends that the ALJ ignored her fibromyalgia, and relied only on objective findings, the undersigned finds this argument unavailing.  The ALJ recognized that Dr. Evans' examination revealed multiple trigger points, and found that Plaintiff's fibromyalgia was a severe impairment and appeared to be the primary cause of Plaintiff's symptoms.  (R. at 14, 19–20.)  In considering Dr. Evans' extensive records regarding Plaintiff's treatment, the ALJ found that the administrative record as a whole failed to demonstrate a "combination of impairments" of the level of severity that would limit Plaintiff to sedentary work.  Once again, the undersigned finds that this conclusion was reasonable.  Although Dr. Evans' records provide some support for the diagnosis of fibromyalgia, nothing in her treatment notes, other than a reliance on Plaintiff's subjective complaints, demonstrates that Plaintiff's fibromyalgia pain was severe enough to limit Plaintiff to sedentary work.  To the contrary, on at least two occasions in 2008, Dr. Evans opined that Plaintiff's pain was relatively well controlled.  (R. at 395, 415.)  Furthermore, the ultimate assessment of Plaintiff's credibility as to her subjective complaints of pain, particularly the severity of pain arising from fibromyalgia, is reserved to the ALJ.  In this case, as described further below,[5] the ALJ had substantial evidence to support his finding that Plaintiff was not entirely credible as to her subjective complaints of pain.

Finally, the undersigned concludes that the ALJ did not err in granting "great weight" to

---

[5] Plaintiff raises a separate contention of error as to Plaintiff's credibility.  The undersigned will, therefore, address this issue in a separate section.

Dr. McCloud's state-agency opinion and accepting it as a "generally accurate representation of the claimant's status."[6]  (R. at 19.)  Plaintiff essentially maintains that the ALJ should not have given weight to Dr. McCloud because he rendered his opinion prior to Dr. Evans' treatment, the diagnosis of fibromyalgia, and more restrictive opinions regarding Plaintiff's capacity to work. (*See* Statement of Errors 17, ECF No. 14.)  Nevertheless, as noted above, the ALJ accounted for Plaintiff's fibromyalgia in reaching his RFC conclusion.  Furthermore, the ALJ was justified in rejecting Dr. Evans' more restrictive sedentary opinion because it was conclusory; unsupported by Dr. Evans' treatment notes and other records; and inconsistent with the ALJ's credibility finding as to Plaintiff's subjective complaints.  Finally, Plaintiff's claim was based not only on fibromylagia, but also on Plaintiff's post surgery back problems, which Dr. McCloud did consider.  Under these circumstances, there was nothing improper in granting weight to Dr. McCloud's findings.  The ALJ properly found Dr. McCloud's description of Plaintiff's limitations to be generally representative of Plaintiff's abilities and took into account the changes in the record in his overall analysis.  *See McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 32 (6th Cir. 2009) (holding that an ALJ did not err in relying on state agency physician opinions that were not based on the entire record because the ALJ "took into account any relevant changes in [Plaintiff's] condition.").

In summary, Dr. Evans' opinion as to the exertional level at which Plaintiff could perform work was not entitled to controlling weight.  Furthermore, the record evidence, as well as the ALJ's credibility finding, would justify a reasonable person in reaching the assigned RFC.

---

[6] The undersigned notes that although the ALJ did grant Dr. McCloud's opinion "great weight," he found, in addition to Dr. McCloud's findings, that Plaintiff must be allowed to change positions every 45 to 60 minutes.  (R. at 19–20.)

Accordingly, the undersigned finds that the ALJ did not err in rejecting Dr. Evans' treating physician opinion and assigning a less restrictive RFC.

B.  Credibility

Plaintiff also maintains that the ALJ erred in assessing her credibility regarding her subjective complaints of pain.  (R. at 18–20.)  As indicated above, the ALJ's assessment of credibility is particularly important in this case because Plaintiff has the severe impairment of fibromyalgia.  For the reasons that follow, the undersigned finds that substantial evidence supports the ALJ's credibility assessment.

The United States Court of Appeals for the Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir.1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he [or she] must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.  *Id.*

*Rogers*, 486 F.3d at 247.  Furthermore, the Sixth Circuit has noted that "[t]he ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue*, 263 Fed. Appx. 469, 475 (6th Cir. 2008) (citing *Walters v.  Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *see also McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 524 (6th Cir. 2008).  Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Walters*, 127 F.3d at 531.  The ALJ's decision on credibility must be "based on a consideration

25

of the entire case record." *Rogers*, 486 F.3d at 247 (internal quotation omitted).

In making credibility determinations, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 532.  In assessing credibility:

> Relevant factors for the ALJ to consider in his [or her] evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id.*; *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2-3 (July 2, 1996) (Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements).

*Rogers*, 486 F.3d at 247.

In this case, the ALJ concluded that although Plaintiff's impairments could reasonably cause the alleged symptoms, she was not entirely credible as to her statements concerning the intensity, persistence, and limiting effect of her symptoms.  (R. at 18.)  The ALJ further determined that his RFC accounted for the location, duration, frequency, and intensity of Plaintiff's symptoms.  (R. at 20.)  The administrative decision identified three justifications for the credibility finding.  First, the ALJ found that Plaintiff's "extensive daily activities" were inconsistent with her allegedly incapacitating symptoms.  (*Id.*)  Second, the ALJ noted that despite Plaintiff's symptoms the record and medical evidence provided no indication of a surgical lesion or recurrent disc problems; provided that Plaintiff was experiencing some degree of pain control for her fibromyalgia pain; and failed to demonstrate of adverse side effects for medication.  (*Id.*)  Third, the ALJ found that while Plaintiff acknowledged that she ultimately resigned from work due to losing her nursing license, documents associated with her disability

26

application contradicted her testimony regarding her inability to continue work.  (*Id.*)  Plaintiff maintains that these reasons are insufficient to discount her credibility in this case.

The undersigned agrees with Plaintiff that her daily activities provide minimal support for discounting her credibility.  Plaintiff reported performing a variety of daily activities, both at her hearing and to Dr. Virgil.  These activities included minimal household chores, limited shopping, gardening, swimming, brushing her horses, and stretching exercises.  Nevertheless, the Court of Appeals for the Sixth Circuit has provided that, in assessing credibility in the context of a fibromyalgia patient, "minimal daily functions are not comparable to typical work activities." *Rogers*, 486 F.3d at 248 (finding that an ALJ's reliance on a claimant's testimony that she was "still able to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news" was not sufficient support for the ALJ's credibility determination); *see also* Kalmbach v. Comm'r of Soc. Sec., No. 09-2076, slip op. at 23 (6th Cir. Jan. 7, 2011) (noting that "minimal activities are hardly consistent with eight hours' worth of typical work activities").  Accordingly, without more, the ALJ would not have been justified in his determination that Plaintiff was only particularly credible as to the severity of her pain.

Nevertheless, the undersigned finds that substantial evidence supports the ALJ's credibility finding.  Most damaging to Plaintiff's credibility is the tension between her application for disability as set forth in her Disability Report and her administrative hearing testimony.  As detailed above, Plaintiff's Report indicates that she stopped working as a registered nurse on April 6, 2006, the same date as her alleged disability onset.  (R. at 106–07.) Plaintiff maintained that she was unable to work on that date because of her back problems and depression, which made standing, walking, and other activities difficult.  (R. at 106.)  In her

Report, Plaintiff specifically stated that she stopped working "because my back was hurting too bad and the Doctor took me off of work." (*Id.*) Plaintiff's hearing testimony, however, portrays a different picture of why Plaintiff stopped working. At the hearing Plaintiff indicated that while she had been considering filing a disability claim at the time she stopped working, she "pretty much resigned" in April 2006 due to difficulty with her nursing license. (R. at 46.)

Although there may be possible ways to reconcile Plaintiff's statements,[7] the Court finds that a reasonable reading of Plaintiff's testimony and Disability Report indicates that Plaintiff was not entirely forthcoming as to her reasons for stopping work in her application for benefits. Specifically, Plaintiff provided no indication that she had stopped working due to a problem with her nursing license. Because Plaintiff's reasons for resigning and her alleged onset date are both obviously important to the disability evaluation process, the tension between Plaintiff's Report and hearing testimony provides inferential support for the conclusion that Plaintiff is not entirely credible with regard to the extent of her symptoms. Based on these circumstances, as well as the discretion that Commissioner receives in the area of judging credibility, it was reasonable for the ALJ to find that Plaintiff was not entirely credible as to her subjective complaints of pain.[8]

C. Medical Vocational Guidelines

Plaintiff's final contention of error is that the Court should find Plaintiff disabled at least as of her fiftieth birthday, July, 29, 2008, pursuant to Medical Vocational Guideline 201.14.

_____

[7] In her Statement of Errors and Reply, Plaintiff contends that her testimony and Disability Report are not inconsistent. Even in attempting to reconcile the different statements, however, the undersigned finds it difficult to harmonize that Plaintiff's pain reached a disabling level on the same date that she had to resign due to licensing difficulties.

[8] The undersigned finds that the lack of objective findings detailed in the ALJ's credibility assessment are relevant and bolster the ALJ's opinion to the extent Plaintiff claims disability based on her degenerative disc impairments. Additionally, Dr. Evans' indications that, at times, Plaintiff's pain was relatively well controlled also supports the ALJ's credibility assessment.

Plaintiff notes that this guideline applies to a person who can perform only sedentary work. Nevertheless, as the undersigned has already determined the ALJ did not err in rejecting Dr. Evans' opinion that Plaintiff was restricted to sedentary work. As such, Medical Vocational Guideline 201.14 is not applicable.

## VII.  Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the Court **AFFIRM** the decision of the Commissioner.

## VIII.  Notice

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate

review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the

issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

January 11, 2011                                        /s/ *Elizabeth A. Preston Deavers*
                                                        Elizabeth A. Preston Deavers
                                                        United States Magistrate Judge