UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KAREN D. GRIDER,

    Plaintiff,

v.

    Civil Action 2:10-cv-00083
    JUDGE GREGORY L. FROST
    Magistrate Judge E.A. Preston Deavers

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court for consideration of the January 11, 2011 Report and Recommendation (ECF No. 18). In her Report and Recommendation, the Magistrate Judge recommended that the Court affirm the decision of the Commissioner of Social Security ("Commissioner"). Plaintiff filed Objections to the Report and Recommendation on January 21, 2011 (ECF No. 19). She specifically maintains that the Magistrate Judge erred in assessing the weight the ALJ gave to the medical opinion evidence and erred in reviewing the ALJ's credibility determination. For the following reasons, Plaintiff's Objections are **OVERRULED** and the Report and Recommendation is **ADOPTED**.

## I. BACKGROUND

    A. Relevant Facts[1]

Plaintiff seeks disability benefits, alleging an onset date of April 6, 2006. Plaintiff

---

[1] The Magistrate Judge provided a detailed description of the record evidence in her Report and Recommendation. (*See* Report & Recommendation 2–15, ECF No. 18). The Court will, therefore, summarize only the facts it finds most relevant to Plaintiff's Objections.

contends she is disabled because of back problems and depression. In May 2000, Plaintiff fell at work and began suffering from hip and back pain. (R. at 223–34.) In October 2002, Plaintiff underwent back surgery. (*See* R. at 282).

In filing for disability in April 2006, Plaintiff completed a "Disability Report." As the Magistrate Judge described:

> Plaintiff maintained that she was unable to work because she was "in pain all the time" due to her back problems and depression. (R. at 106.) Plaintiff's Report indicates that she worked as a registered nurse until April 6, 2006. (R. at 106–07.) In her Report, Plaintiff states that she stopped working on this date "because my back was hurting too bad and the Doctor took me off of work." (R. at 106.) Furthermore, Plaintiff explicitly provided in her report that she became unable to work "because of [her] illnesses, injuries, or conditions" on April 6, 2006. (R. at 106.)

(Report & Recommendation 2, ECF No. 18.) During her 2009 administrative testimony, Plaintiff provided an alternative reason for why she stopped working. Plaintiff testified that she "pretty much resigned" because she was having difficultly maintaining her nurse's license. (R. at 46.) Plaintiff did indicate that she was having some physical trouble completing her work at this time and was considering filing a disability claim. (R. at 46.)

Dr. Jerry McCloud reviewed Plaintiff's medical records and performed a physical residual functional capacity ("RFC") on July 19, 2006. (R. at 303–10.) The Magistrate Judge summarized Dr. McCloud's opinions as follows:

> Dr. McCloud concluded that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. (R. at 304.) According to Dr. McCloud, Plaintiff could stand, walk, and/or sit for about six hours in an eight hour workday. (Id.) In reaching these conclusions, Dr. McCloud considered Plaintiff's back problems following her surgery, as well as her complaints of pain. (R. at 305.) Dr. McCloud observed [] that despite allegations of fibromyalgia, the condition was not diagnosed. (Id.) Dr. McCloud also found that Plaintiff should never climb ladders, ropes, or scaffolds, but she could occasionally balance, stoop, kneel, crouch, or crawl. (R. at 305.) In his final notes, Dr. McCloud opined that

2

> Plaintiff was partially credible in her description of her conditions and limitations. (R. at 306.) Nevertheless, Dr. McCloud also noted Plaintiff had "a history of being apprehended and going through rehab for stealing Morphine with her nurses medicine card at work in 2004." (R. at 308.) He also noted that she was trying to have her nurses license reinstated. (Id.) Dr. McCloud's opinion was affirmed by state agency physician, Gerald Klyop, M.D., on November 20, 2006. (R. at 346.)

(Report & Recommendation 7–8, ECF No. 18.)

Plaintiff received treatment from Dr. Karen Evans, neurologist, beginning in June 2006. Upon initial appearance, Plaintiff indicated to Dr. Evans that she continued to have pain, which was becoming worse, since her back surgery. (R. at 282.) In September 2006, Dr. Evans noted that she suspected that Plaintiff's pain had "a myofascial component to it." (R. at 352.) On October 2006, Dr. Evans reported that she spent time with Plaintiff "talking about chronic myofascial pain and the need to make life style changes in order to manage it." (R. at 351.) At this point, Dr. Evans recommended physical therapy and daily low-impact aerobic exercise. (*Id.*)

On August 13, 2007, Plaintiff saw Dr. Evans "for her fibromyalgia." (R. at 370.) Dr. Evans noted that Plaintiff had "multiple trigger points that localize throughout the cervical, thoracic and lumbar paraspinal musculature also over the hip, lateral epicondyles in the medial aspect of the knees." (*Id.*) During followup examinations in early 2008, Dr. Evans once agian recorded that Plaintiff had multiple trigger points. (R. at 401, 405.) In both May and September of 2008, Dr. Evans noted that Plaintiff's pain was relatively well controlled, but noted that Plaintiff continued to report pain. (R. at 395, 415.)

In March 2009, Dr. Evans completed a "Medical Opinion Regarding Physical Capacity for Work" form. (R. at 429.) Specifically, Dr. Evans checked a box labeled "Sedentary Work,"

which provided a brief definition of the category. (*Id.*) Despite the forms request for supporting medical findings, Dr. Evans did not identify the medical findings that supported her conclusion. (*Id.*)

### B. The Commissioner's Decision

In May 2009, the Administrative Law Judge ("ALJ") issued a decision, which the Commissioner later adopted, finding Plaintiff was not disabled. The ALJ found that Plaintiff's severe impairments were degenerative disc disease of the lumbosacral spine status post 2002 L4-5 laminectomy and fibromyalgia. (R. at 14.)

The ALJ assigned the following RFC to Plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. The claimant can sit for six hours in an eight-hour workday and stand and/or walk for six hours in an eight-hour workday, but must be able to change position every 45 to 60 minutes. She can frequently climb ramps/stairs but can never climb ladders/ropes/scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She is not otherwise functionally limited and despite her limitations is capable of remaining on task.

(R. at 17.)

In reaching his RFC opinion, the ALJ weighed the opinion evidence of Drs. McCloud and Evans. The ALJ reconciled the opinions this way:

> The State Agency opinion (Exhibit 7F) is considered in accordance with Social Security Ruling 96-6p. This assessment is reasonably consistent with and is well supported by the objective medical evidence and accepted as a generally accurate representation of the claimant's status. It has been given great weight in this case. However, in addition to the residual functional capacity described, the claimant would also [] require[] the opportunity to change position every 45 to 60 minutes as is found above.
>
> Careful consideration has been given to the opinion expressed by Dr. Evans on March 12, 2009 (Exhibit 24F). It is noted that Dr. Evans is an attending physician. However, her assessment was the description on a form rather than a

4

> personalized specific function by function analysis. Furthermore, the extensive treatment records discussed above of Dr. Evans regarding the claimant's treatment and the diagnostic and clinical findings described by Dr. Evans and elsewhere in the medical record fail to demonstrate a musculoskeletal impairment or combination of impairments of such severity as to limit the claimant to the degree described. Accordingly, her opinion is unsupported and unpersuasive.

(R. at 19–20.)

Additionally, the ALJ found Plaintiff to be not entirely credible as to the extent of her symptoms. (R. at 18.) In reaching this conclusion, the ALJ performed a thorough summary of Plaintiff's medical record including Dr. Evans' treatment records concerning fibromyalgia. (R. at 18–20.) Ultimately, the ALJ emphasized that Plaintiff's daily activities; her medical records; and tension between her disability application and testimony led him to conclude that Plaintiff exaggerated within her subjective complaints. (R. at 20.)

## II. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to

5

reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice withing which the decision-makers can go either way, without interference by the courts.' " *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal; citation omitted). Even if supported by substantial evidence, however, " 'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## III. ANALYSIS

### A. Medical Opinion Evidence

In her first objection, Plaintiff maintains that Dr. Evans' opinion was entitled to controlling weight and that the ALJ should not have given weight to the opinion of Dr. McCloud. (Objections 2–3.) The Magistrate Judge specifically found that the ALJ did not err in assigning Plaintiff's RFC and rejecting the opinion of Dr. Evans. (Report & Recommendation 20, Ecf No. 20.)

After review of the record, the Court first finds that Dr. Evans' opinion, that Plaintiff was capable of only sedentary work, was not entitled to controlling weight. As the Magistrate Judge noted, certain issues, such as an individual's RFC, are reserved to the Commissioner and opinions on these issues are not entitled to any special significance. 20 C.F.R. § 404.1527(e); SSR 96-5p, 1996 WL 374183, *2 (July 2, 2000). Social Security Ruling 96-p specifically states:

> From time-to-time, medical sources may provide opinions that an individual is limited to "sedentary work," "sedentary activity," "light work," or similar statements that appear to use the terms set out in our regulations and Rulings to describe exertional levels of maximum sustained work capability. Adjudicators must not assume that a medical source using terms such as "sedentary" and "light" is aware of our definitions of these terms. The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability.

*Id.* at *5. The Magistrate Judge appropriately recognized that Dr. Evans' "sedentary" assessment was a conclusion on an issue reserved to the Commissioner:

> In this case, the ALJ did not reject Dr. Evans' diagnoses. Instead, after considering the opinion, the ALJ rejected Dr. Evans' isolated conclusion that Plaintiff was limited to sedentary work. (R. at 20.) Dr. Evans was aware of the definition of sedentary work, which was described immediately next to the sedentary box which she checked. Nevertheless, based on the Social Security Ruling above, Dr. Evan's exertional level opinion went beyond the scope of a medical source statement and touched on an issue reserved to the ALJ. Accordingly, Plaintiff was not entitled to the treating physician deference she seeks.

(Report & Recommendation 21, ECF No. 18.)

Furthermore, even assuming Dr. Evans' opinion was not on an issue reserved to the Commissioner, the ALJ was justified in rejecting it. As the United States court of Appeals for the Sixth Circuit has recently outlined:

> The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." [*Wilson* v. *Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)] (quoting 20 C.F.R. § 404.1527(d)(2)). On the other hand, a Social Security Ruling explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors,

7

>including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

*Blakely*, 581 F.3d at 406.

In this case, Dr. Evans' opinion was conclusory in nature and did not identify the findings on which she based the opinion. (*See* R. at 429.) Furthermore, as the Magistrate Judge also noted, the ALJ had significant reasons to reject the opinion:

>With respect to Plaintiff's degenerative disc disease, the undersigned finds substantial evidence supporting the ALJ's rejection of Dr. Evans' sedentary opinion. Specifically, Dr. Evans' treatment notes and findings, as well as other portions of the record, do not provide any clear support for the notion that Plaintiff's back pain limits her to sedentary work. As the ALJ noted although Plaintiff underwent a microdisectomy in 2002, later testing did not reveal indication of a recurrent disc malady. Tellingly, Dr. McCloud, who reviewed Plaintiff's file shortly after her alleged disability date, and considered Plaintiff's post-surgery back pain, found Plaintiff capable of performing tasks consistent with a light level of work. (See R. at 303–10.)
>
>Although Dr. Evans' records provide some support for the diagnosis of fibromyalgia, nothing in her treatment notes, other than a reliance on Plaintiff's subjective complaints, demonstrates that Plaintiff's fibromyalgia pain was severe enough to limit Plaintiff to sedentary work. To the contrary, on at least two occasions in 2008, Dr. Evans opined that Plaintiff's pain was relatively well controlled. (R. at 395, 415.) Furthermore, the ultimate assessment of Plaintiff's credibility as to her subjective complaints of pain, particularly the severity of pain arising from fibromyalgia, is reserved to the ALJ.

(Report & Recommendation 22–23, ECF No. 18.) Accordingly, to the extent Plaintiff objects on the grounds that Dr. Evans' sedentary RFC opinion was entitled to controlling weight, her objection is unavailing.

Plaintiff also maintains within her first objection that the ALJ erred in giving great weight to Dr. McCloud's opinion. (Objection 2–3, ECF No. 18.) Plaintiff stresses that this

8

opinion was based only on Plaintiff's severe impairment of degenerative disc disease and did not factor in fibromyalgia. Additionally, Plaintiff emphasizes that Dr. McCould is only a reviewing physician, as opposed to Plaintiff's treating physician Dr. Evans.

The Court finds that the ALJ did not err in granting Dr. McCloud's opinion great weight. It appears that, in reaching his opinions, Dr. McCloud did not focus on Plaintiff's fibromylagia. (*See* R. At 303–10.) Nevertheless, the ALJ did consider Plaintiff's fibromyalgia, and myofascial pain, as well as the remainder of Plaintiff's medical evidence, in reaching his RFC finding. (*See* R. at 19–20.) The ALJ specifically observed that Dr. Evans' treatment notes indicate that despite Plaintiff's fibromyalgia she "experienced some degree of pain control with conservative treatment including pain management." (R. at 20.) Furthermore, in giving weight to Dr. McCloud's opinion, the ALJ added an additional restriction, requiring that Plaintiff receive an opportunity to change positions every 45 to 60 minutes. (R. at 19–20.) Accordingly, the Magistrate Judge was correct in her conclusion:

> The ALJ properly found Dr. McCloud's description of Plaintiff's limitations to be generally representative of Plaintiff's abilities and took into account the changes in the record in his overall analysis. *See McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 32 (6th Cir. 2009) (holding that an ALJ did not err in relying on state agency physician opinions that were not based on the entire record because the ALJ "took into account any relevant changes in [Plaintiff's] condition.").

(Report & Recommendation 24, ECF No. 18.)

The Court also finds Plaintiff's implication regarding Dr. McCloud's status as a reviewing physician unavailing. It is true that, pursuant to the applicable regulations, the Commissioner will generally give more weight to examining and treating medical sources then to reviewing medical sources. 20 C.F.R. § 416.927(d). This general proposition, however, does not mean that the ALJ must adopt an unsupported opinion of a treating physician. *See Anderson*

9

*v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled.")  As the Magistrate Judge noted, "the ALJ was justified in rejecting Dr. Evans' more restrictive sedentary opinion because it was conclusory; unsupported by Dr. Evans' treatment notes and other records; and inconsistent with the ALJ's credibility finding as to Plaintiff's subjective complaints."  (Report & Recommendation 24, ECF No. 18.)

The Court emphasizes that it must review the ALJ's decision under a substantial evidence standard, and cannot substitute its own judgment.  *Blakley*, 581 F.3d at 407 ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (internal quotation omitted).  In this case, based on the record evidence and the lack of clear support for Dr. Evan's conclusory RFC opinion, the Court finds that the ALJ's decision to favor the reviewing opinion of Dr. McCloud was reasonable.

B.  Credibility

Plaintiff's second objection maintains that the Magistrate Judge erred in accepting the ALJ's credibility assessment.  (Objections 3–4, ECF No. 19.)  The Magistrate Judge found that while Plaintiff's daily activities provided minimal support to the ALJ's credibility assessment, substantial evidence still supported the credibility finding due to the tension between Plaintiff's application and her hearing testimony.  (Report & Recommendation 27–28, ECF No. 18.)  Within her Objections, Plaintiff contends that her application and hearing testimony are not contradictory.  She also maintains that the ALJ's focus on objective testing, in finding her less

than entirely credible, demonstrates the ALJ did not properly consider her fibromyalgia.

Upon review, the Court finds that the Magistrate Judge applied the correct law in considering Plaintiff's credibility claim.[2]  Specifically, the Magistrate Judge stated:

> The United States Court of Appeals for the Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:
>
>> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).  First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a).  Second, if the ALJ finds that such an impairment exists, then he [or she] must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*
>
> *Rogers*, 486 F.3d at 247.  Furthermore, the Sixth Circuit has noted that "[t]he ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 Fed. Appx. 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *see also McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 524 (6th Cir. 2008).  Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531.  The ALJ's decision on credibility must be "based on a consideration of the entire case record." *Rogers*, 486 F.3d at 247 (internal quotation omitted).
>
> In making credibility determinations, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 532.  In assessing credibility:
>
>> Relevant factors for the ALJ to consider in his [or her] evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that

---

[2] Plaintiff does not raise any challenge to the law the Magistrate Judge applied.

11

> > precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id.*; *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2-3 (July 2, 1996) (Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements).
>
> *Rogers*, 486 F.3d at 247.

(Report & Recommendation 25–26, ECF No. 18.)

The Court finds that substantial evidence supports the ALJ's credibility finding. Like the Magistrate Judge, the Court finds the tension between Plaintiff's disability application and her hearing testimony damaging to her credibility. Specifically, Plaintiff's Objection ignores the clear tension between the two instances. In her "Disability Report," Plaintiff explicitly stated that she stopped working April 6, 2006, her alleged onset date, "because my back was hurting too bad and the Doctor took me off work," providing no suggestion of issues with her nursing license. (R. at 106.) At her hearing, however, Plaintiff's testimony indicates that she stopped working primarily due to the loss of her nursing license. (R. at 46.) Based on the tension between these two statements, the Court agrees with the Magistrate Judges observations:

> [T]he Court finds that a reasonable reading of Plaintiff's testimony and Disability Report indicates that Plaintiff was not entirely forthcoming as to her reasons for stopping work in her application for benefits. Specifically, Plaintiff provided no indication that she had stopped working due to a problem with her nursing license. Because Plaintiff's reasons for resigning and her alleged onset date are both obviously important to the disability evaluation process, the tension between Plaintiff's Report and hearing testimony provides inferential support for the conclusion that Plaintiff is not entirely credible with regard to the extent of her symptoms. Based on these circumstances, as well as the discretion that Commissioner receives in the area of judging credibility, it was reasonable for the ALJ to find that Plaintiff was not entirely credible as to her subjective complaints

  of pain.

(Report & Recommendation 28, ECF No. 18.)

  Finally, the Court finds nothing improper in the ALJ's reliance on the medical evidence in considering Plaintiff's credibility.  Plaintiff's objection that the ALJ's credibility finding was based on "objective testing" appears to be based on the notion that fibromyalgia, one of Plaintiff's severe impairments, "unlike medical conditions that can be confirmed by objective testing . . . present[s] no objectively alarming signs."[3]  *Rogers*, 486 F.3d at 243.  Nevertheless, in finding that Plaintiff was not entirely credible, the ALJ performed a thorough review of the medical evidence, including Dr. Evans' findings as to Plaintiff's fibromyalgia.  (R. at 18–20.)  Furthermore, in evaluating Plaintiff's credibility in this regard, the ALJ did not only consider "objective testing," but also indicated that Dr. Evans' fibromyalgia treatment notes demonstrated pain control to some extent.  (R. at 20.)  Furthermore, to the extent Plaintiff's subjective complaints are based on the severe impairment of degenerative disc disease, the ALJ was justified in considering objective testing.  Accordingly, the Court finds no merit to this objection.

---

[3] Accordingly, fibromyalgia places an emphasis on evaluation of Plaintiff's subjective complaints.  *Swain v. Comm'r Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003).  Nevertheless, a claimant is not automatically entitled to disability benefits based on a fibromyalgia diagnosis alone.  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008).

## IV.  CONCLUSION

Based on the above reasons, and the reasons set forth in the Magistrate Judge's January 11, 2011 Report and Recommendation, the Court concludes that substantial evidence supports the ALJ's decision.  Plaintiff's Objections are **OVERRULED** and the Report and Recommendation is **ADOPTED**, and the Court **AFFIRMS** the decision of the Commissioner.

**IT IS SO ORDERED.**

    **/s/   Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**